UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-CR-20224-BB

UNITED STATES OF AMERICA

vs.

ALAN LI,

   **Defendant.**
_____/

### DEFENDANT ALAN LI'S SENTENCING MEMORANDUM

Defendant Alan Li, by and through undersigned counsel, respectfully submits this Sentencing Memorandum, and states:

### INTRODUCTION

On January 12, 2023, Mr. Li will appear before this Court for sentencing.[1] Mr. Li understands the gravity of his crime. He fully appreciates that a substantial prison term is warranted and welcomes the opportunity to receive all treatment available to him. Prior to his incarceration, Mr. Li devoted his adult life to helping others. He is intent on redeeming himself. The purpose of this Sentencing Memorandum is only to ask this Court to impose a minimum term of supervised release with more limited conditions than what probation has recommended. Mr. Li also requests the statutory 10-year minimum prison sentence.

### DISCUSSION

**I. The nature and circumstances of the offense**

Over the course of a two-month period between March 12 and May 12, 2022, Mr. Li (who had otherwise led an exemplary life) exchanged a series of text messages with an undercover agent

---

[1] On October 27, 2022, Mr. Li pled guilty to Count 2 of the government's indictment, which charged him with Attempted Coercion and Enticement of a Minor to Engage in Sexual Activity, in violation of 18 U.S.C. § 2422(b).

1

posing as a "trafficker." In these messages, Mr. Li inquired about sex with minor girls in the Miami area. Mr. Li also discussed pricing with the agent, though no payment was ever made. On April 12, 2022, Mr. Li agreed to meet the undercover agent at a Five Guys in Miami Beach, Florida, after which he was told he could meet the minor female. He was asked to bring candy to make the minor female feel more comfortable. Ultimately, Mr. Li did not show up as scheduled, but continued to chat with the agent about another meet up. On May 2, 2022, Mr. Li again agreed to meet the undercover agent at a designated location in Broward County, but again did not show up. Mr. Li had no further communication with the agent after this date. On May 12, 2022, Mr. Li was arrested.

While Mr. Li did not actually show up to any meeting, he fully recognizes that under the law of the Eleventh Circuit his conduct constitutes a crime under 18 U.S.C. § 2422(b). Mr. Li is acutely aware of his deplorable actions and knows that his future is forever altered. He will never be able to practice medicine, which has been his lifelong dream, and he will always be labeled a sex offender. To say that he profoundly regrets what he has done would be an understatement.

**II.     Mr. Li's history, characteristics, and family circumstances**

Mr. Li is not a bad man. He is a good man who simply needs help. As the letters of support attached as **Exhibit A** to this memorandum show, Mr. Li has loving, supportive parents and a brother who will be there for him every step of the way and upon his release. For as long as he can remember, Mr. Li wanted to be a doctor so that he could commit his life to helping others. In Mr. Li's eyes, he has already received the greatest punishment of all: because of his conviction, he will never practice medicine again. At the young age of 27 with his career only just getting started, this is an agonizing pill for him to swallow.

Prior to his arrest, Mr. Li had no involvement with law enforcement. As a child and young adult, he was a model student. He rarely drank alcohol and never did any hard drugs, instead dedicating himself to his studies and his goal of becoming a doctor. After graduating valedictorian of his high school class in Columbus, Ohio, Mr. Li went on to excel at the University of Miami, where he was the sole recipient of the academic achievement award from the Chemistry Department at graduation. From there, Mr. Li graduated at the top of his medical school class at the University of Virginia, and thereafter worked as an emergency medicine doctor at the Mount Sinai Medical Center in Miami, Florida. In the 10 short months he was there prior to his arrest, Mr. Li was twice recognized by the Emergency Department for his outstanding service to patients.

As his friends and family all attest, Mr. Li is deeply remorseful for what he has done and eager to redeem himself. They describe Mr. Li as extremely bright, responsible, dependable, altruistic, and someone they look up to. He is the person who is always there to help others, no matter how busy he is. As one friend put it, "I couldn't ask for a more selfless friend." *See* Letter from Brendan McBreen (Dec. 17, 2022). In their letter, Mr. Li's parents quoted from several emails that Mr. Li sent them from prison. In the emails, Mr. Li stated that he "will work every day for the rest of [his] life towards being a better man," and that, while he can no longer help people as a doctor anymore, he "hope[s] someday [he] can make a positive impact on people's lives again." *See* Letter from Kevin Li and Jinbo Hu (Dec. 4, 2022).

As a man of science, Mr. Li knows that as part of his sentence and rehabilitation he will have the opportunity to receive mental health counseling and treatment, and he will do whatever it takes to get better, embracing this opportunity. Although being a doctor is no longer in the cards for him, he has the education and skillset to be able to contribute to society in other ways, such as through medical research. Given Mr. Li's young age, at the time of his release, he will still have

an entire life ahead of him to make a tremendous impact. The more limitations that are placed on Mr. Li upon his release from prison, however, the less likely it is that he will be able to do so.

### III. The Proposed Sentence

Mr. Li's offense has a statutory 10-year minimum prison sentence, which Mr. Li respectfully requests that this Court should impose a sentence no greater than. Mr. Li's sentence also requires a minimum five-year term of supervised release, with a maximum term of life.[2] For someone who is still in their twenties, the difference between five years and life is extraordinary. Mr. Li is respectfully asking the Court to impose a five-year term of supervised release.

A survey of the cases involving 18 U.S.C. § 2422(b) in the Southern District of Florida reveal that lifetime supervised release is reserved for only the most egregious conduct, far beyond the facts of Mr. Li's crime. Aris Gungormez and Joseph Meahl, for example, were both already registered and convicted sex offenders. *See* Factual Proffer Statement, *U.S. v. Gungormez*, No. 18-cr-60100 (S.D. Fla. July 25, 2018), ECF No. 18 and Factual Proffer Statement, *U.S. v. Meahl*, No. 16-cr-60104 (S.D. Fla. Sept. 13, 2016), ECF No. 23. Other cases where lifetime terms of supervised release were ordered include:

- Andres Camilo Ruiz pretended to be a 12-year-old female on a messaging application, sent numerous minor victims child pornography including videos of minor females inserting objects into their genitals, and used this as a way to persuade the victims to send him similar videos. Ruiz then traded the victims' videos with others. *See* Corrected Factual Proffer Statement, *U.S. v. Ruiz*, No. 19-cr-60223 (S.D. Fla. July 27, 2021), ECF No. 87.

- Henry Alvarez Flores engaged in explicit internet communications with three minor male victims under age 14, persuaded each victim to send videos and pictures of themselves masturbating, and sent them gifts in exchange. Flores also persuaded one of the victims to send pictures and videos of himself inserting an object into his anus, also in exchange for a gift. *See* Factual Proffer Statement, *U.S. v. Flores*, No. 18-cr-60240 (S.D. Fla. May 20, 2019), ECF No. 45.

---

[2] The Presentence Investigation Report also notes that the Court may impose a maximum fine of $250,000. Given Mr. Li's financial circumstances and limited assets, he asks this Court not to impose any fine beyond what is statutorily required.

- Brian Wayne Schmuhl sent very sexually graphic messages to a 16-year-old female and persuaded her to send him pornographic images and videos of herself masturbating and displaying her genitalia. After the female's grandmother reported this activity to the police, law enforcement intervened and messaged Schmuhl in an undercover capacity, posing as a 12-year-old female. Schmuhl proceeded to send the undercover agent similarly sexually graphic messages, as well as images of his genitalia and other pornographic images and videos. In addition, he requested that she send him photos of her vagina. *See* Factual Proffer Statement, *U.S. v. Schmuhl*, No. 20-cr-60009 (S.D. Fla. June 30, 2020), ECF No. 25.

It goes without saying that the severity of Mr. Li's actions does not rise even close to the level of any of these cases. The conduct of defendants who received a five-year term of supervised release, on the other hand, is much more on par (if not worse) with that of Mr. Li. Some examples of Defendants who were given a five-year supervised release term include:

- Byron McCormick exchanged over 700 chat communications with an undercover agent posing as the father of a 10-year-old minor female. McCormick expressed interest in having sexual relations with the minor, and agreed to pay $100 in exchange. The agent also spoke with McCormick posing as the minor on several occasions. McCormick discussed with the minor the specific sexual activity he wanted her to engage in and sent photographs of his erect penis. Eventually, McCormick and the agent agreed to meet at a restaurant to exchange money, after which they would go to a hotel for the sexual encounter. ***Unlike in Mr. Li's case, McCormick showed up to the restaurant and gave money to the agent before being arrested.*** *See* Factual Proffer Statement, *U.S. v. McCormick*, No. 17-cr-60091 (S.D. Fla. May 8, 2017), ECF No. 17.

- Sergio Maldonado exchanged a series of messages with an undercover agent posing as a 15-year-old girl named Rachel. Maldonado told Rachel that he would give her two Xanax pills in exchange for sex. He also offered to buy her a cellular phone in exchange for sex on a monthly basis. The two agreed to meet at a fitness center. ***Unlike in Mr. Li's case, Maldonado showed up at the fitness center before being arrested.*** *See* Factual Proffer Statement, *U.S. v. Maldonado*, No. 16-cr-60002 (S.D. Fla. March 22, 2016), ECF No. 29.

- Charles Thomas Smith posted an ad on Craigslist stating that he was seeking a sexually submissive girl. The ad also displayed a picture of an adult erect penis and contained a graphic description of the sexual activity being solicited. A detective responded to the ad posing as a 15-year-old girl. Smith explicitly described the sexual activity he was seeking. He told her that he was "clean," always used protection, and would buy more for when they met. Smith agreed to pick her up the following morning at her house after her mom left for work. ***Again, unlike in Mr. Li's case, Smith was arrested only***

5

> *after he arrived at the location.* See Factual Proffer Statement, *U.S. v. Smith*, No. 11-cr-80104 (S.D. Fla. Aug. 8, 2011), ECF No. 40.

- Jorge Muentes paid a deposit for sexual services with both a minor and an adult female located in San Jose, Costa Rica, and purchased a plane ticket from Miami to San Jose to meet them at a hotel there. Following a jury trial, Muentes was found guilty and sentenced to 10 years imprisonment with five years of supervised release. ***Unlike Mr. Li, Muentes paid a deposit, purchased a flight, and, rather than accept responsibility for his actions, elected to take his case to trial.*** See Complaint and Judgment, *U.S. v. Muentes*, No. 07-cr-20994 (S.D. Fla. Nov. 20, 2007 and May 30, 2008), ECF Nos. 1; 79.

While Mr. Li's conduct was severe and criminal, in some ways, it was less severe than the above defendants who received a five-year supervised release term. Broadly speaking, in nearly all instances, defendants charged and convicted under § 2422(b) in the Eleventh Circuit, including the above defendants, will either (1) show up to a meeting location proposed by an undercover agent, often with condoms; (2) purchase a gift such as a teddy bear or candy to give to the minor; and/or (3) pay a "deposit" to the undercover agent.[3] *See, e.g., U.S. v. Gillis*, 938 F.3d 1181 (11th Cir. 2019) (Defendant drove to meet undercover agent posing as the parent of fictitious 11-year-old daughter, in anticipation of engaging in sexual activity with daughter after meeting agent, requested that the daughter be wearing a particular outfit without underwear, and had an abundance of prepubescent images and internet search terms on his computer); *U.S. v. Murrell*, 368 F.3d 1283 (11th Cir. 2004) (Defendant made an online deal with a purported adult father to have sex with the father's minor daughter, traveled to another county to meet the purported daughter for sex in

---

[3] Even in those cases before this Court where Your Honor imposed a 10-year term of supervised release, ***unlike Mr. Li***, the Defendants all showed up to a meeting location, among other things. See Factual Proffer Statement, *U.S. v. Lugo*, No. 22-cr-20033 (S.D. Fla. July 8, 2022), ECF No. 24 (Defendant showed up at designated meeting location with a $200 payment and two Happy Meals to give to minor female); Factual Proffer Statement, *U.S. v. Toribio*, No. 19-cr-60255 (S.D. Fla. Dec. 6, 2019), ECF. No. 21 (Defendant showed up at designated meeting location and sent images to undercover agent via text message indicating he had purchased condoms and lube); Factual Proffer Statement, *U.S. v. Blake*, No. 15-cr-80018 (S.D. Fla. March 31, 2015), ECF No. 28 (Defendant showed up at designated meeting location proposed by undercover agent); Factual Proffer Statement, *U.S. v. Wells*, No. 14-cr-60295 (S.D. Fla. May 13, 2015), ECF No. 49 (Defendant showed up at designated meeting location proposed by undercover agent; Defendant had also previously met with minor victim before victim's parents reported incident to police and law enforcement took over).

exchange for money, and was carrying a teddy bear, $300 in cash, and a box of condoms when he arrived).

Make no mistake, Mr. Li admits that the content of his discussions with the agent and his efforts to solicit sexual activity with a minor-aged female were unquestionably criminal. Unlike the vast majority of other Defendants, however, Mr. Li did not show up, did not purchase a gift, and did not pay a deposit.[4] While this certainly does not diminish the seriousness of what Mr. Li has done, it does make his case unique. It is Mr. Li's hope that this Court takes these distinguishing factors and his personal characteristics and history into account and affords him a more limited five-year supervised release term.

### IV.  Several of the Presentence Investigation Report's recommended supervised release conditions are disproportionate to Mr. Li's offense

"To be valid, a special condition of supervised release must (1) be reasonably related to a statutory sentencing factor; (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in 18 U.S.C § 3553(a); and (3) be consistent with any pertinent policy statements issued by the Sentencing Commission." *U.S. v. Coglianese*, 34 F.4th 1002, 1010 (11th Cir. 2022) (citing *U.S. v. Zinn*, 321 F.3d 1084, 1089 (11th Cir. 2003) (internal citations omitted)). In deciding whether to impose a condition of supervised release, the district court "must consider defendant's history and characteristics, provide both adequate punishment and rehabilitation of defendant, and protect society at large." *Id*. (citations omitted).

---

[4] Indeed, outside of the 11th Circuit, some courts have held that, absent a defendant showing up at a meeting point or taking other preparatory steps such as making a hotel reservation, purchasing a gift, or buying a bus or train ticket, a defendant cannot be said to have taken a substantial step towards engaging in sexual activity with a minor. *See U.S. v. Gladish*, 536 F.3d 646 (7th Cir. 2008) ("[t]reating speech (even obscene speech) as the 'substantial step' would abolish any requirement of a substantial step . . . [and would not] distinguish people who pose real threats from those who are all hot air . . . .").

The Presentence Investigation Report ("PSI") recommends certain conditions of supervised release. (ECF No. 34). As discussed below, several of these conditions are unrelated to Mr. Li's offense and/or impose a greater deprivation of Mr. Li's liberty than is reasonably necessary. In turn, Mr. Li is respectfully asking that these terms be modified.

a. **Computer Possession Restriction.** The PSI suggests that Mr. Li should not be permitted to possess or use a computer during his supervised release term except in connection with authorized employment, provided that he obtains approval from the Court. Technological advancement is only moving forward. Mr. Li is being asked to submit to these terms and conditions in the present, even though they will not be imposed for around another decade, at a time when our understanding of what a computer is could be markedly different than what it is today. [5]

While some courts including this one[6] have held that a cellular phone meets the statutory definition of a computer under the Sentencing Guidelines, here, Mr. Li did not post any online advertisements. He did not utilize online blogs, chatrooms, or social media websites to solicit minors. He did not use the dark web. He did not exchange or consume child pornography. Rather, he directly messaged an undercover agent about being set up with minor-aged females. The types of threats to minors that are conventionally associated with computer use were simply not present in Mr. Li's case.

Paragraph 99 of the PSI provides that Mr. Li may be subject to the installation on his computer of hardware or software systems that monitor his computer use. This is a much more reasonable and proportionate punishment that appreciates that computer use is already so engrained in our society (and likely will only become more engrained after Mr. Li's sentence) that

---

[5] Relatedly, the PSI recommends that Mr. Li be prohibited from possessing or using any data encryption program. While Mr. Li does not take issue with this recommendation, he asks that he be permitted to use certain data encryption programs with court approval, should this be necessary in the future.
[6] *See* Paperless Order Denying Motion to Vacate, *U.S. v. Touizer*, 17-cr-60286 (S.D. Fla. Jan. 7, 2023), ECF No. 302.

an outright prohibition would be nearly impossible. In turn, Mr. Li is asking this Court to remove the computer use restriction and to instead require him to install a system that will allow his computer use to be monitored.

  **b.**  **Restriction from Possession of Sexual Materials.** The PSI is also seeking to prohibit Mr. Li from possessing sexually explicit materials, which includes possession of any visual depictions of adults engaging in sexually explicit conduct. Mr. Li's offense did not involve the possession or exchange of sexually explicit materials. Therefore, a restriction this broad is unnecessary and disproportionate. Mr. Li asks that this this condition not be included in his supervised release terms.

  **c.**  **No contact with minors**. There is nothing that Mr. Li can do to take back what he did. And he will suffer the consequences of his actions for the remainder of his life as a registered sex offender. But prohibiting Mr. Li from communicating with minors for any reason whatsoever places him in an impossible position that will isolate him from the family and friends who are committed to supporting him. Both the federal and state sex offender registry systems have restrictions and safeguards in place to limit sex offender communication with minors. If a defendant takes any action that runs afoul of these restrictions, there are severe consequences. Mr. Li submits that the federal and state offender registries will impose a sufficient deprivation of liberty in this regard, and asks that the Court not include probation's recommendation as part of his supervised release terms.

  **d.**  **Self-employment restriction**. Lastly, as already discussed, there is no question that Mr. Li is a highly bright and motivated individual. A restriction on self-employment except if Court permitted imposes a burdensome limitation on Mr. Li's job prospects. There is no indication that Mr. Li ever engaged in the type of business that probation is aiming to prevent through this

restriction—i.e., business that bears some relation to trafficking or producing sexually explicit material. Mr. Li asks that this Court not include a restriction on self-employment as a term of his supervised release in order to afford him the best chance to contribute to society.

## CONCLUSION

Mr. Li accepts full responsibility for his actions. He recognizes that he has forever altered an otherwise exemplary life with a promising future. He knows that he has much work to be done in order to again positively contribute to society. Acknowledging that, for the reasons set forth in this memorandum, Defendant Alan Li respectfully requests that this Court impose a ten-year term of incarceration, and a five-year term of supervised release with conditions consistent with the above.

/s/ Daniel L. Rashbaum
Daniel L. Rashbaum
Fla Bar No. 75084
Julie Levine
Fla Bar No. 1007991
**MARCUS NEIMAN RASHBAUM & PINEIRO LLP**
2 South Biscayne Boulevard, Suite 2530
Miami, Florida 33131
Tel: (305) 400-4261
Fax: 866-780-8355
drashbaum@mnrlawfirm.com
jlevine@mnrlawfirm.com

*Counsel for Alan Li*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing motion was filed with the Clerk of the Court and all parties of record, via CM/ECF on January 9, 2023

/s/ Daniel L. Rashbaum
Daniel L. Rashbaum